**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Obet Lagumbay RAMILO,
Defendant–Appellant.**

**No. 92–10079.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1992.

Decided Feb. 22, 1993.

Deana S. Spencer, Asst. Federal Public Defender, Honolulu, HI, for defendant-appellant.

Leslie E. Osborne, Jr., Asst. U.S. Atty., Honolulu, HI, for plaintiff-appellee.

Before: JAMES R. BROWNING, WILLIAM A. NORRIS and REINHARDT, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Appellant Obet Lagumbay Ramilo pled guilty to charges of wire fraud, interstate transportation of stolen property, and credit card fraud. The district court imposed concurrent sentences of thirty months imprisonment followed by three years supervised release. The district court also ordered Ramilo to pay $454,841.97 in restitution during the term of his supervised release. Ramilo challenges the restitution order.

Ramilo argues that in ordering him to pay nearly half of a million dollars in restitution during the three year period of supervised release, the district court failed to consider Ramilo's financial resources and future ability to pay, and points out that his yearly income prior to his arrest was $30,000, that he and his wife have combined assets of $23,000, and that he has six dependent children.

## I.

The sole response made by the United States in its brief is that Ramilo's plea agreement precludes him from challenging the restitution order. The government relies on 18 U.S.C. § 3663(a)(3) which authorizes a district court to order restitution "to the extent agreed-to by the parties in a plea agreement."

We need not consider the effect of section 3663(a). It is clearly not applicable to this case. The parties did not agree in the plea agreement that Ramilo would pay restitution. The provision relied upon reads: "the defendant understands that the court may order restitution ... to the following individuals in the amounts listed"—followed by a list of alleged victims and the amount each claimed to have lost. This was not an agreement that Ramilo would pay restitution in the amounts listed in exchange for a lighter sentence—such an agreement would have read quite differently.[1] The provision in this case did no more than specify the amount of the loss sustained by each victim and hence the amount the court might order Ramilo to pay as a result of his guilty plea. Its apparent purpose was to establish that Ramilo's guilty plea was made knowingly and voluntarily and with full appreciation of the maximum penalty provided for by law. *See* Fed. R.Crim.P. 11.

## II

In oral argument the United States offered an alternative ground in support of the order. The government conceded a restitution order must be supported by some evidence of present or future ability to pay but argued this showing is not required until the obligation to pay arises. Ramilo was sentenced to 30 months imprisonment followed by three years of supervised release, and, by the terms of the order, his obligation to make restitution did not arise until the period of supervised release began. The government contends defendant's ability to pay need not be resolved unless and until defendant defaults and the court is asked to enforce the order or to reduce the amount to be paid.

The government's concession that at some point the record must reflect a possibility the defendant will be able to pay the amount fixed is supported by a reasonable reading of the language of the statute, the legislative history and case authority. We find no support, however, for the government's contention that this possibility need not appear from the record at the time of sentencing unless the obligation to pay arises at that time.

1. *See, e.g., United States v. Soderling,* 970 F.2d 529, 531 (9th Cir.1992) ("[Defendants] agreed to plead guilty to the two counts contained in the *pending information and to make restitution for* the losses stemming from those two offenses and from the other five transactions, all in return for the government's agreement not to prosecute them for offenses arising out of the other five transactions."); *United States v. Rice,* 954 F.2d 40, 41 (2d Cir.1992) (defendant specifically agreed that restitution need not be limited *to the counts to which he pled guilty and the* scope and effect of the restitution order were provided in a separate rider to the plea agreement).

■ The statute requires the court to consider the defendant's financial resources and earning ability in determining the amount of restitution to be paid.[2] Although we have held the statute does not require express findings on these factors and grants the district court broad discretion in the kind and amount of evidence required, it does not "leave the district court free to disregard the statutory requirements." *United States v. Cannizzaro,* 871 F.2d 809, 811 (9th Cir.1989). The Senate Judiciary Committee emphasized that it was the intention of Congress "that the offender's ability to pay will be a factor in the restitution order," and, more directly to the point, "that the order will cover a period that will reasonably assure *full and complete payment* of the restitution order." (emphasis added).[3] The Committee noted this intention was consistent with American Bar Association Criminal Justice Standard 8–2.3, subparagraph (e)(i) of which provides, inter alia, "[c]onditions requiring payment of fines, restitution, reparation, or family support, should not go beyond the probationer's ability to pay."

We held in *United States v. Smith,* 944 F.2d 618, 623 (9th Cir.1991) that "if a district court fails to consider a defendant's ability to pay, the court abuses the discretion afforded it by the Act." We noted that after considering the financial resources, needs and earning capacity of defendant Smith, the district court "found that although [defendant] 'may not currently possess significant assets, he has demonstrated the ability to accumulate assets in the amount of the restitution order within five years from his release from custody'

[the time fixed by the district court]. The court therefore satisfied the requirements of the Act." *Id.* Other circuits agree that although future restitution may be ordered despite a defendant's present indigency, the order must be based on some evidence the defendant may be able to pay the amount fixed when required to do so—the possibility of an unforeseeable windfall is not enough. *United States v. Bailey,* 975 F.2d 1028, 1031–33 (4th Cir.1992); *United States v. Logar,* 975 F.2d 958, 961–64 (3d Cir.1992); *United States v. Dunning,* 929 F.2d 579, 581 (10th Cir.1991); *United States v. Rogat,* 924 F.2d 983, 985 (10th Cir.1991); *United States v. Clark,* 901 F.2d 855, 857 (10th Cir.1990); *United States v. Mitchell,* 893 F.2d 935, 936 n. 1 (8th Cir. 1990); *United States v. Mahoney,* 859 F.2d 47, 50–52 (7th Cir.1988).

In contrast, the government's argument that a deferral of the obligation to pay restitution also defers the court's obligation to consider the defendant's ability to pay the amount fixed, is inconsistent with the language and legislative history of the statute and unsupported by authority.

By its terms the statute contemplates that the amount of restitution will be determined at the time of sentencing, based upon the financial needs and earning ability of the defendant, among other factors. "[C]ongress plainly envisioned that the time when the balancing of the victim's loss against the defendant's resources and circumstances should occur was when the court was 'determining whether to order restitution under section 3579 ... and the amount of such restitution'". *United*

---

**2.** The statute provides the court, in determining whether to order restitution "and the amount of such restitution, shall consider," inter alia, "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents." 18 U.S.C. § 3664(a).

**3.** S.Rep. No. 532, 97th Cong., 2d Sess. 32 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2538. The Senate Judiciary Committee stated:

The committee recognizes that an offense—particularly one causing bodily injury or death—may have lifelong cost implications for the victim or the victim's family, but it also recognizes that there may sometimes be a

practical necessity in limiting both the amount of restitution ordered and the period during which restitution payments are ordered to be made. In line with the American Bar Association Criminal Justice Standard 18–2.3, the Committee's intention is that the *offender's ability to pay will be a factor in the restitution order, and that the order will cover a period that will reasonably assure full and complete payment of the restitution order* notwithstanding any maximum period of probation or incarceration the defendant could have served.

*Id.* at 2537–38. (Emphasis added.)

*States v. Atkinson,* 788 F.2d 900, 903 (2d Cir.1986) (quoting 18 U.S.C. § 3580(a)).[4]

■ Under the statute, restitution is part of the criminal sentence. The judge must balance the victim's need for compensation against the other goals of sentencing, including rehabilitation. *Logar,* 975 F.2d at 964; *United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987); Project, *Congress Opens a Pandora's Box—the Restitution Provisions of the Victim and Witness Protection Act of 1982,* 52 Fordham L. Review 507, 542 (1984). It is vital to the success of rehabilitation that the restitution obligation imposed upon the defendant by the sentence be one the defendant is capable of satisfying. As the Seventh Circuit said in *United States v. Mahoney:*

> [A]t the time the court orders restitution it is most paramount that the defendant, in the all-important rehabilitative process, have at least a hope of fulfilling and complying with each and every order of the court. Thus, an impossible order of restitution, as made in this case, is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitution and impeding the rehabilitation process.

859 F.2d at 52; *see also Bailey,* 975 F.2d at 1032 ("A district court's failure to make a restitution order with which a defendant could possibly be expected to comply threatens respect for judicial orders generally"); *Logar,* 975 F.2d at 964; Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv.L.Rev. 931, 940 (1984); Harland, *Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts,* 30 UCLA L.Rev. 52, 92 (1982).

**4.** *See supra* note 3.

**5.** Our recent decision in *United States v. Jackson,* 982 F.2d 1279, 1284–85 (9th Cir.1992), is not inconsistent with our holding in this case. It does not appear that Jackson challenged the restitution award on the ground that he was or would be unable to make the ordered payments. Our opinion in *Jackson* merely restated the law by reiterating that a presently indigent defendant may be ordered to pay restitution whether

■ Accordingly, we hold that at the time restitution is ordered the record must reflect some evidence the defendant may be able to pay restitution in the amount ordered in the future. In so holding, we acknowledge the "VWPA does not prohibit a sentencing court from imposing a restitutionary sentence on a defendant who is indigent at the time of sentencing." *United States v. Ruffen,* 780 F.2d 1493, 1495 (9th Cir.1986). The question here, however, is not whether the district court improperly imposed restitution on a *presently* indigent defendant, but whether the record indicates the district court considered the defendant's *future* ability to pay. We find it does not.[5]

The only evidence in the record the government suggests supports the restitution amount is that Ramilo shipped abroad, without authorization, consigned art works valued at about $150,000 and traveled abroad shortly before his arrest for the avowed purpose of raising money. The record suggests some of the exported art work had been returned to the owners and does not indicate defendant's money raising efforts met with success. The defendant reported total assets of $23,000, consisting of an 1986 Oldsmobile owned by his wife and art work valued at $20,000 owned by his art gallery. The only information regarding his future earning ability is that he received a Bachelor of Science degree from the College of Arts and Trade in Manila, that he was employed as a graphic arts salesman earning $1500 to $2075 per month until he opened his own art gallery, and that his income from the gallery before it failed was approximately $30,000 a year. The probation report concluded "defendant has limited resources to pay restitution and a fine," and it adds "[i]f defendant becomes employed when released from custody, this

or not he possesses sufficient assets at the time of sentencing if the possibility exists that he will have the ability to do so in the future. *Jackson* did not purport to break new ground. Nor did it purport to address the quantum of evidence that must be present to support a finding that there is, in fact, a reasonable possibility the defendant may be able to pay the amount fixed in the future.

would increase his ability to pay." The United States Attorney told the court "Mr. Ramilo, who is a foreign national, who does face eventual exclusion from this country, and who appears to be without funds, cannot realistically be expected to make restitution to his victims or even to pay a significant fine." [6]

This record does not suggest there is any possibility Mr. Ramilo could pay restitution in the amount of $454,841.97 within three years of completion of his prison sentence.

The order is VACATED and REMANDED for further consideration in light of this opinion.

6. The district court remarked that if defendant were deported "he should not even be re-allowed in the United States until such time as he has made good on his obligation to those he has deprived."