999 F.2d 545
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sue MONROE, Defendant-Appellant.
 No. 92-30207.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1993.*
Decided July 27, 1993.
 
 Before CANBY, WIGGINS and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 After a jury trial, Sue C. Monroe[1] was convicted of bank fraud, possessing and uttering forged securities, and money laundering, in violation of 18 U.S.C. §§ 513(a), 1344, and 1957(a). She appeals her convictions and sentence. We affirm.
 
 I. Denial of Pre-Trial Motions
 A. Motion to Suppress Evidence
 
 3
 Monroe contends that the federal agents who executed the warrant for her arrest violated the knock-and-announce provisions of 18 U.S.C. § 3109. She further argues that, absent the observations of the officers who entered her Chicago apartment to arrest her, the affidavits supporting the search warrant for the apartment were insufficient to demonstrate that evidence of a crime would be found there. She contends that the district court accordingly erred by denying her motion to suppress the evidence obtained from her Chicago apartment. We disagree.
 
 
 4
 We review de novo the denial of a motion to suppress evidence, but we review for clear error the district court's findings of historical facts. United States v. Ramos, 923 F.2d 1346, 1351 (9th Cir.1991). Pursuant to 18 U.S.C. § 3109, a federal officer "may break open any outer or inner door or window of a house, or any part of a house, ... to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance[.]" Section 3109 also applies when federal officers are serving an arrest warrant. United States v. Dicesare, 765 F.2d 890, 896 (9th Cir.1985) (citing Miller v. United States, 357 U.S. 301, 306 (1958)), amended on other grounds, 777 F.2d 543 (9th Cir.1985).
 
 
 5
 Several agents went to Monroe's Chicago apartment to serve the arrest warrant. Agent Maloney first attempted to gain access to the apartment by posing as a Federal Express delivery man. When this ruse failed, Maloney requested that the building manager, James Foley, open the apartment door with his pass key.[2] At the suppression hearing, Maloney testified that he identified the agents and their purpose before Foley opened the door. Agent Williams testified that Maloney twice identified the agents and their purpose, once before and once after Foley had placed the key in the door. Foley testified only that Maloney announced the agents' identity before the door was opened; Foley's testimony did not mention an announcement of the agents' purpose. At the conclusion of the hearing, the district court made findings of fact that, before Foley opened the door, Agent Maloney "identified himself as a federal agent, indicated that he had an arrest warrant and asked to be admitted." The district court further found that, "[a]t the time the key was inserted, Agent Maloney again identified the purpose for his wishing to gain entry and then they entered the apartment." Despite the minor inconsistencies in the testimony at the hearing, Monroe has not demonstrated that the district court's findings of fact are clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) ("when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error"). Accordingly, we affirm the district court's conclusion that the agents complied with section 3109. Monroe's challenge to the search warrant for the Chicago apartment rests on the premise that the arresting officers violated section 3109. Because we reject that premise, we also reject her claim that the search of the apartment was invalid.[3]
 
 
 6
 B. Motion to Suppress Monroe's Statements to Federal Agents
 
 
 7
 Monroe contends that the district court erred by denying her motion to suppress statements she made to investigators. She argues that the statements were inadmissible because they were made during the course of plea discussions. We find no error.
 
 
 8
 The district court's determination whether parties were engaged in plea discussions is a factual finding, which we review for clear error. United States v. Guerrero, 847 F.2d 1363, 1367 (9th Cir.1988). Statements made by a defendant during the course of plea discussions generally are inadmissible. Fed.R.Crim.P. 11(e)(6)(D); Fed.R.Evid. 410. A statement is considered to have been made during plea discussions if "(1) the suspect exhibited an actual subjective expectation that [s]he was negotiating a plea at the time of the discussion; and (2) the suspect's expectation was reasonable given the totality of the circumstances." Guerrero, 847 F.2d at 1367 (citations omitted).
 
 
 9
 Shortly after her arrest, Monroe was interviewed at the Pierce County Jail by Special Agent Wojnicz and Seattle Police Detective Buckland. After being given Miranda warnings, Monroe told the officers that she was attempting to retain a particular Seattle attorney to represent her, but that, at that time, she was representing herself. Monroe chose to answer only some of the agents' questions. She did, however, volunteer to the officers that she had information about criminal activity by a banker, and that she would disclose this information in exchange for favorable treatment by the government in the case against her.
 
 
 10
 The district court ruled that Monroe's attempt to gain favorable treatment from the officers did not constitute plea negotiations; therefore the court denied her motion to suppress other statements she made during the interrogation.[4] Monroe has failed to demonstrate that the district court's finding that she was not engaged in plea negotiations is clearly erroneous. We conclude that, even if she had an actual subjective expectation that she was negotiating a plea when she was interrogated by Wojnicz and Buckland, this expectation was not reasonable in light of the totality of the circumstances. See Guerrero, 847 F.2d at 1367.[5]
 
 II. Exclusion of Juror for Cause
 
 11
 Monroe argues that the district court erred by excusing prospective juror Helen Gordon for cause.[6] During voir dire, Gordon stated that, because both she and Monroe were black, Gordon would have to serve as Monroe's spokesperson on the jury. Moreover, Gordon indicated that she would hold the government to a heightened burden of proof. She further stated that "it would be difficult" for her to follow the court's instructions and vote to convict Monroe, although Gordon added that she "would have no alternative" if she were chosen for the jury. Read as a whole, Gordon's statements to the court and counsel demonstrate a lack of impartiality. Accordingly, we conclude that the district court did not abuse its discretion by excusing her for cause. See United States v. Claiborne, 765 F.2d 784, 800 (9th Cir.1985) (district court's decision to excuse a prospective juror for cause is reviewed for an abuse of discretion), cert. denied, 475 U.S. 1120 (1986); United States v. Daly, 716 F.2d 1499, 1507 (9th Cir.1983) ("[t]he district court must excuse a prospective juror if actual bias is discovered during voir dire"), cert. dismissed, 465 U.S. 1075 (1984).
 
 
 12
 III. Sufficiency of Evidence that Monroe Defrauded Seafirst Bank
 
 
 13
 Monroe argues that the evidence did not establish that Seafirst Bank was put at risk of loss as a result of her fraudulent scheme. Therefore, she argues that her convictions for bank fraud are invalid. We reject these arguments.
 
 
 14
 We must uphold a conviction if, viewing the evidence and all reasonable inferences in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). To obtain a conviction under 18 U.S.C. § 1344, the government is not required to prove that the bank suffered a loss. United States v. Mason, 902 F.2d 1434, 1442 (9th Cir.1990) ("a federally supported financial institution need not incur a 'loss' in order to be a victim of 'false or fraudulent pretenses, representations, or promises' ") (quoting 18 U.S.C. § 1344(a)(2)). "Specific intent [to defraud] is established by 'the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself.' " Mason, 902 F.2d at 1442 (quoting United States v. Green, 745 F.2d 1205, 1207 (9th Cir.1984), cert. denied, 474 U.S. 925 (1985)) (additional quotation omitted).
 
 
 15
 The evidence at trial established that Monroe, using a false name and a false IRS employer identification number, opened a business checking account at Seafirst Bank in the name of "Fidelity Trust." She then presented for deposit numerous forged checks drawn on Merrill Lynch accounts that belonged to other people. Seafirst Bank credited $977,600 worth of fraudulent checks to Monroe's "Fidelity Trust" account. At least one of the checks that Monroe deposited was returned to Seafirst unpaid by Bank One, the bank at which Merrill Lynch had its accounts.[7] We find this evidence sufficient to allow a rational jury to conclude, beyond a reasonable doubt, that Monroe was guilty of bank fraud. See Jackson, 443 U.S. at 319; Mason, 902 F.2d at 1442.
 
 IV. Application of the Guidelines
 
 16
 A. Increase in Offense Level for Obstruction of Justice
 
 
 17
 Monroe argues that the district court erred by upwardly adjusting her offense level for obstruction of justice under U.S.S.G. § 3C1.1 because (1) the record does not support the adjustment; and (2) the district judge did not make adequate findings to support the adjustment. These arguments fail.
 
 
 18
 We review de novo whether a defendant's conduct constitutes obstruction of justice under section 3C1.1 of the Sentencing Guidelines. United States v. Morales, 977 F.2d 1330, 1331 (9th Cir.1992), cert. denied, 13 S.Ct. 1399 (1993). Underlying factual findings are reviewed for clear error. Id. at 1330. The relevant version of section 3C1.1 provides that, "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, [then] increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (1991). The commentary to section 3C1.1 states that its enhancement applies if the defendant "produc[ed] or attempt[ed] to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding", or "provid[ed] materially false information to a judge or magistrate", or "provid[ed] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, comment. (n. 3(c)(f)(g)).
 
 
 19
 The district court increased Monroe's base offense level by two levels because the court found that: (1) following her arrest, she used several different names in her dealings with law enforcement officials, and that her conduct resulted in a significant hindrance to the investigation and prosecution of the offenses; and (2) she filed various documents with the district court using false names and, in particular, falsely represented that she was pregnant in an attempt to obtain release on bond. Because the commentary to Guideline section 3C1.1 states that such conduct warrants an enhancement for obstruction of justice, we conclude that the district court did not err in enhancing Monroe's offense level. See id.
 
 
 20
 B. Upward Departure from the Sentencing Range
 
 
 21
 Monroe asserts that the district court erred by upwardly departing from the sentencing range. We review the district court's decision to depart upward under the three-part test established by United States v. Lira-Barraza, 941 F.2d 745 (9th Cir.1991) (en banc). First, we review de novo whether the district court had legal authority to depart. Id. at 746. Second, we review for clear error the factual findings supporting the existence of the basis for departure. Id. Third, we review for abuse of discretion whether the degree of departure was reasonable. Id. at 747.
 
 
 22
 Here, the district court departed upward from the base offense level of 26 to level 28, and from a criminal history category V to category VI. These departures increased the sentencing range from 110-137 months to 140-175 months. The district court sentenced Monroe to a 168-month prison term.
 
 1. Upward Departure in Offense Level
 
 23
 At the sentencing hearing, the district court explained that:
 
 
 24
 I believe that an upward departure from the guideline range of 110 to 137 months is appropriate. I find that Application Note 10 to Section 2F1.1 clearly indicates where the loss of the amount calculated does not reflect the true measure of the damages here, additional adjustments are appropriate.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 [T]he defendant was successful in actually getting $977,000 out of the hands of Merrill Lynch and into a bank account which she totally controlled, and she was on the brink of getting another $200,000, give or take, in checks which had been written on Merrill Lynch accounts and sent to [Seafirst Bank]. And only because the bank officers rejected those checks were those checks not cashed. The best determination that I can find as to how much additional increase there should be is the two points that is the type of adjustment upward you would get for obstruction. In addition to the amount involved, I think the fact that this entire scheme was entered into to obtain a bail for her son who was sitting in the King County Jail waiting to go to trial for first degree murder, the fact that she got the bond, the bond was filed with the King County, and it is only because of circumstances that her son was not released[, these facts] would again merit some adjustment upward as an alternative. And again, I find that that is another alternative basis for a total of two points upward.
 
 
 28
 Given this record, we conclude that the district court satisfied the three Lira-Barraza requirements for an upward departure. First, the district court identified aggravating circumstances that the Sentencing Commission did not adequately take into account when formulating the guidelines applicable to Monroe's offenses. See id. at 746. The district court also made findings of fact to support the existence of the identified circumstances, and Monroe has not demonstrated that these findings are clearly erroneous. See id. Finally, the two-level departure was reasonable, and the district court properly explained its decision by drawing an analogy with the adjustment for obstruction of justice. See id. at 747, 751.[8]
 
 2. Criminal History Category
 
 29
 The district court explained its decision to increase Monroe's criminal history score as follows:
 
 
 30
 I find that her criminal history category of 12 convictions and resulting in a criminal history category of 5 does not adequately describe this defendant's criminal history, which is extensive. It is as long a criminal history as I have ever seen. And I believe that there should be added [sic] and a departure upward is merited in my opinion because her criminal history does not adequately reflect the true nature of her total criminal history. Having said that, I believe the most appropriate range would be the range of 140 to 175 months.
 
 
 31
 The district court had legal authority to depart upward on this basis. See U.S.S.G. § 4A1.3 (1991) ("[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct ..., the court may consider imposing a sentence departing from the otherwise applicable guideline range"). Second, the district court's finding of a factual basis for this departure is not clearly erroneous; four of Monroe's adult theft convictions were not considered in calculating her criminal history score because they were related to other offenses that were considered. The guidelines specifically allow an upward departure if the definition of related cases is overly broad and results in a criminal history score that underrepresents the seriousness of the defendant's criminal history. See U.S.S.G. § 4A1.2, comment. (n. 3) (1991). Finally, the extent of the departure was reasonable, and the district court adequately explained its reasons for departing upward in light of the structure, standards, and policies of the Guidelines. See Lira-Barraza, 941 F.2d at 751.
 
 3. Use of Uncounselled Convictions
 
 32
 Monroe also argues that two of her convictions should not have been considered in calculating her criminal history score because she was not represented by counsel in those cases. This argument fails.
 
 
 33
 Monroe made written objections to the presentence report's use of these convictions to compute her criminal history score. The probation officer who prepared the presentence report stated that these convictions were included because California law requires that a defendant make an intelligent waiver of counsel; accordingly, the probation officer presumed that Monroe had knowingly and intelligently waived her right to counsel in these cases. The probation officer also noted that Monroe "represented herself for a period of time in the instant proceedings and that self-representation was consistent with the long-established pattern." Monroe made no showing that she did not knowingly waive counsel in the prior cases. At her sentencing hearing, Monroe did not contest the use of these convictions to calculate her criminal history score, nor did she request a hearing to collaterally attack these prior convictions. The district court accepted the probation officer's use of the uncounselled convictions to calculate Monroe's initial criminal history category, but decided to depart upward.
 
 
 34
 This court has held that "the Constitution requires that defendants be given the opportunity to collaterally attack prior convictions which will be used against them at sentencing." United States v. Vea-Gonzales, No. 91-30469, slip op. 7329, 7343 (9th Cir. July 13, 1993). In Vea-Gonzales, prior to sentencing, the defendant had moved for a hearing to collaterally attack a prior conviction on the ground of ineffective assistance of counsel, but the district court had denied the motion. Id. at 7333. Here, in contrast, Monroe did not request a hearing, nor did she allege that she was unconstitutionally denied counsel in the prior cases. Cf. United States v. Newman, 912 F.2d 1119, 1121 (9th Cir.1990) (burden is on the defendant to establish that conviction was not constitutionally valid). Accordingly, because Monroe was not deprived of an opportunity to challenge her prior convictions, we conclude that this case is distinguishable from Vea-Gonzales, and that the use of the uncounselled convictions to calculate Monroe's criminal history score was permissible.
 
 V. Restitution Order
 
 35
 Monroe's final contention is that the district court erred in imposing restitution in the amount of $172,139.54 because (1) the district judge failed to make oral or written findings that she had the present or future ability to pay this amount; and (2) the record is devoid of evidence demonstrating that she has the ability to pay the restitution.
 
 
 36
 The first part of Monroe's argument is meritless. This court has held that, in determining the amount of restitution to be paid, the district court is not required to make express findings regarding a defendant's financial resources and earning ability. United States v. Ramilo, 986 F.2d 333, 335 (9th Cir.1993) (citing United States v. Cannizzaro, 871 F.2d 809, 811 (9th Cir.), cert. denied, 493 U.S. 895 (1989)).
 
 
 37
 The second part of Monroe's argument also lacks merit. When a district court orders restitution, "the record must reflect some evidence [that] the defendant may be able to pay restitution in the amount ordered in the future." Ramilo, 986 F.2d at 336. Here, the presentence report stated in pertinent part:
 
 
 38
 United States Probation officials for the Central District of California indicated that according to the Los Angeles County Tax Assessor's Office, the defendant is the owner of the Encino property, which she bought in 1990 for $975,009.[9]
 
 
 39
 We find this evidence sufficient to satisfy the Ramilo standard and sustain the district court's determination that Monroe has the ability to pay restitution. See id. at 336.[10]
 
 
 40
 Accordingly, we affirm Monroe's convictions and sentence.
 
 
 41
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The government asserts that after she was charged, Monroe revealed her true name as Carolyn Demonbruen Hayes. We use the name Monroe because the defendant has continued to use it during this appeal
 
 
 [2]
 Although the agents did not break open the door, section 3109 applies because of the use of the pass key. See Sabbath v. United States, 391 U.S. 585, 590 & n. 6 (1968) ("s 3109 applies to entries effected by the use of a passkey") (citing Munoz v. United States, 325 F.2d 23, 26 (9th Cir.1963) (additional citations omitted))
 
 
 [3]
 In her pro se supplemental brief, Monroe also contends that the search of her home in Encino, California, was invalid because the agents "knocked and announced" at the door to her house, rather than at the security gate that controlled entrance to the development in which her property was located. This contention is not supported by any case law; we therefore reject it. Accordingly, we deny as moot her motion to submit to this court a photograph of the security gate
 
 
 [4]
 The statements made by Monroe that were admitted at trial were unrelated to her proffer of information about other crimes
 
 
 [5]
 For the first time on appeal, Monroe argues that her statements should not have been admitted because the interrogation continued after she made an "equivocal request" for an attorney. The record belies this argument. During the interrogation, Monroe never requested an attorney; instead, she explicitly told the agents that she was representing herself. We reject her contention
 
 
 [6]
 Because Gordon was excused, there were no black jurors
 
 
 [7]
 Seafirst did not suffer any monetary loss because the funds that had been credited to Monroe's "Fidelity Trust" account had not been depleted when the forged check was returned, and Seafirst officials froze Monroe's account as soon as they became aware that something was amiss
 
 
 [8]
 The district court stated, moreover, that it was not "double-counting" the obstruction of justice enhancement, but rather was merely drawing an analogy for the purpose of explaining the upward departure
 
 
 [9]
 Although Monroe told the probation officer that she did not own the Encino property, she made no formal objection to this portion of the presentence report
 
 
 [10]
 In her pro se supplemental brief, Monroe asserts that she does not owe restitution because Merrill Lynch has recovered its losses from third parties, and she attached to the brief a letter from Merrill Lynch indicating that it has recovered some of its losses. Because this evidence was not presented to the district court at sentencing, we will not consider it. Monroe may challenge the amount of the restitution order by filing in the district court a motion to correct her sentence pursuant to 28 U.S.C. § 2255