**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Arik Ben BACHSIAN, a/k/a Eric
Bustamante, Defendant–
Appellant.**

**No. 92–50499.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1993.

Decided Sept. 8, 1993.

Barbara E. O'Connor, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Diane E. Hawkes, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: NORRIS, WIGGINS, O'SCANNLAIN, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

A jury convicted Arik Ben Bachsian of one count of possession of stolen goods from interstate commerce, in violation of 18 U.S.C. § 659. Bachsian was sentenced to a term of twelve months[1] and ordered to pay restitution in the amount of $23,243.53. Bachsian appeals his conviction on the grounds that the district court erred in admitting certain documents under Federal Rule of Evidence 803(24). He also appeals the district court's restitution order. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

On January 23, 1992, a container of gloves imported by Action Leather Craft (Action) arrived at Dart International, Inc. (Dart), a Los Angeles trucking and warehousing company. Dart was supposed to store the container until it cleared Customs, at which time it was to be shipped via rail to Action.

At midnight, an unknown individual hitched a tractor to the trailer with the container of gloves, obtained an exit pass by using a fictitious driver's license, and stole the shipment of gloves. Documents prepared in connection with the shipment of the gloves indicated that 730 cartons of gloves, valued at over $82,000, were in the container. Because the container had not cleared Customs, it was sealed at the time of theft. The next day, a California Highway Patrolman discovered the tractor and trailer abandoned. The seal on the container had been broken, and the cargo removed.

Two days later, Bachsian contacted Leroy Sanchez, a government informant, and asked him if he would be interested in buying approximately 600 cartons of gloves. After various phone calls, meetings, and an inspection of the gloves by Sanchez, Bachsian agreed to sell 200 cartons of gloves to Sanchez for $20,000. Bachsian promised to de-

---

1. Earlier this court granted a limited remand of Bachsian's case to revise his sentence to one year and one day so that he is eligible for "good time" credits.

liver the cartons to a Holiday Inn at 10:00 a.m. on the morning of January 31, 1992.

Bachsian arrived at the Holiday Inn at 10:30 a.m. on the agreed date and was arrested. Following his arrest, Bachsian accompanied law enforcement officers to the warehouse where the gloves were being stored. After securing consent to search the warehouse, officers found 544 cartons of gloves inside the warehouse. Testimony indicated that earlier that morning 180 cartons had been loaded into a truck and taken from the warehouse. The 180 cartons on the truck represent nearly the full amount of the original shipment that was not recovered.

A jury convicted Bachsian of possession of stolen goods in violation of 18 U.S.C. § 659. He appeals.

## STANDARDS OF REVIEW

■ "We review a district court's decisions to admit evidence under exceptions to the hearsay rule for an abuse of discretion." *United States v. Bland,* 961 F.2d 123, 126 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992). We review the legality of a sentence de novo. *United States v. Jackson,* 982 F.2d 1279, 1281 (9th Cir.1992); *United States v. Angelica,* 951 F.2d 1007, 1009 (9th Cir.1991). Provided that a restitution order falls within the statutory framework, we review such an order for an abuse of discretion. *Jackson,* 982 F.2d at 1281; *Angelica,* 951 F.2d at 1009.

## DISCUSSION

### I.

The district court ruled that certain shipping documents, namely two ocean bills of lading, two packing lists, and two commercial invoices, were admissible evidence under Rule 803(24) of the Federal Rules of Evidence. We agree.

■ There are five general requirements that evidence must meet to be admissible under Rule 803(24): (1) the evidence must have circumstantial guarantees of trustworthiness, (2) it must be offered to prove a material fact, (3) it must be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, (4) the adverse party must be notified of the proponent's intention to introduce the evidence sufficiently in advance of trial to permit the adverse party a fair opportunity to meet the evidence, and (5) admission of the evidence must serve the general purposes of the Rules of Evidence and must be in the interests of justice. Fed.R.Evid. 803(24); *see also FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 608–09 (9th Cir.1993). "District courts must make detailed findings when admitting evidence under Rule 803(24)." *Figgie,* 994 F.2d at 608; *see also United States v. Chu Kong Yin,* 935 F.2d 990, 1000 (9th Cir.1991). If the district court fails to make such findings, we may review the record to determine if the prerequisites of the rule have been met. *See Figgie,* 994 F.2d at 608; *United States v. George,* 960 F.2d 97, 100 (9th Cir.1992). Our review of the record reveals that the evidence admitted meets the requirements of the rule.

■ First, these documents have particularized guarantees of trustworthiness. *See George,* 960 F.2d at 100. Testimony indicated that customs brokers and United States Customs regularly rely upon the accuracy of such documents. Testimony also indicated that the bill of lading was prepared by the shipper in the exporting country and that the documentation had to be accurate in order to load the goods on the ocean vessel. Thus, the individual who prepared the documents would have had been under some duty to insure that the documents were accurate and would have no incentive to misrepresent the facts recorded on the documents. *See George,* 960 F.2d at 100 (indicating that lack of a motive to lie weighs heavily in favor of a finding of trustworthiness). Moreover, a customs broker testified that he had processed similar documents for the same exporting company before and that they had never been inaccurate. Thus, we conclude that particularized guarantees of trustworthiness supported the admission of the documents in question.

Bachsian attacks the trustworthiness of the documents, arguing that they should not be admitted because "there was no indication that they were prepared by someone with

first-hand knowledge." Bachsian argues that *Chu Kong Yin* requires such a showing. We disagree. In *Chu Kong Yin*, the court held that certain documents were not admissible under Rule 803(24), in part, because there was no evidence either that the documents were prepared by someone with first-hand knowledge or that the documents were contemporaneous recordings of those events. 935 F.2d at 1000. Here, however, testimony established that the documents were routinely prepared contemporaneous with the events they recorded. Nothing more is required under *Chu Kong Yin*.

Second, it is undisputed that the evidence was introduced to prove material facts. The district court admitted the evidence (1) to prove that the container had traveled in interstate commerce, (2) to identify the container, and (3) to prove the contents of the container.

■ Third, we conclude that the documents were the most probative evidence on the points for which they were offered that the government could procure through reasonable efforts. As indicated above, the government introduced the documents (1) to prove that the container had traveled in interstate commerce, (2) to identify the container, and (3) to prove the contents of the container. Bachsian fails to mention what evidence could have possibly proven more probative. Perhaps the testimony of employees of the exporting companies would have been more probative, but it could not be secured through reasonable efforts. We refuse to find that the government needed to drag the shipping clerks of the exporting companies into court. Such a result would place an inordinate burden on the government, especially in light of the fact that United States Customs regularly relies on the documents for the propositions that they were offered to prove.

■ Fourth, we conclude that the government's failure to provide pretrial notice is excused. Generally, for evidence to be admissible under Rule 803(24), notice of reli-

ance upon the rule must be given "sufficiently in advance of the trial ... to provide the adverse party with a fair opportunity to prepare to meet [the evidence]." Fed.R.Evid. 803(24); *see also United States v. Brown*, 770 F.2d 768, 771 (9th Cir.), *cert. denied*, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581, *cert. denied*, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1985), and *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). This court has held, however, that failure to give pretrial notice will be excused if the adverse party had an opportunity to attack the trustworthiness of the evidence. *See Brown*, 770 F.2d at 771. Bachsian had such an opportunity here. Indeed, it appears that he had been informed that the government intended to introduce the documents into evidence and provided with copies of the documents at least two months prior to trial. Moreover, Bachsian "did not move for a continuance[,] ... claim that [he was] unable to meet the evidence," or object at trial on the grounds that he did not receive notice. *See Brown*, 770 F.2d at 771. In addition, the only reason the government did not give pretrial notice was because the government did not intend to rely on Rule 803(24) to admit the evidence.[2] Accordingly, we conclude that the government's failure to give pretrial notice is excused.

Finally, we find that "admitting the [documents] 'furthers the federal rules' paramount goal of making relevant evidence admissible.' " *Figgie*, 994 F.2d at 609 (quoted authority omitted). Accordingly, we conclude that the district court did not abuse its discretion by admitting the shipping documents.

## II.

Next, Bachsian raises two arguments to support his contention that the restitution order was inappropriate in this case. We reject both of his arguments.

First, the Supreme Court recently held that restitution could be ordered under the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664, only for losses caused by the conduct underlying the offense

---

2. The government proffered the evidence pursuant to Rule 803(6), the business record exception to the hearsay rule. The district court apparent-

ly found that exception inapplicable but admitted the evidence nonetheless under Rule 803(24).

of conviction. *See Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990); *see also Jackson,* 982 F.2d at 1282. Bachsian maintains that no loss was caused by his unlawful possession of the stolen gloves. We reject his attempt to distance himself from the consequences of his criminal conduct.

■ Bachsian does not argue that he is being ordered to pay restitution for conduct other than the conduct underlying his offense of conviction. Instead, he argues that mere possession of the stolen merchandise did not "cause" the loss. In essence, he argues that a conviction for possession of stolen goods can never serve as the basis for a restitution order under the VWPA because theft, not the possession, of the goods caused the loss. We reject this argument and hold that the specific conduct underlying Bachsian's conviction for possession of stolen goods caused the victim's loss.[3] *See Hughey,* 495 U.S. at 415–21, 110 S.Ct. at 1982–85. The evidence showed that the only gloves that were not recovered were in the control and possession of Bachsian. Moreover, the evidence showed that Bachsian's conduct while in possession of the stolen gloves resulted directly in the loss of 180 cartons of gloves. The district court ordered Bachsian to pay restitution for the 180 cartons. We have no quarrel with this result.

■ Second, Bachsian argues that the district court did not make a specific finding that he had the ability to pay the restitution. He is correct, but loses nevertheless because the law requires no such finding. Bachsian cites *United States v. Ramilo,* 986 F.2d 333 (9th Cir.1993), in support of his argument. In *Ramilo,* the court held that there must be some evidence in the record at the time restitution is ordered that the defendant may be able to pay the amount ordered in restitution in the future. *Id.* at 336. The court reaffirmed that the " 'VWPA does not pro-

hibit a sentencing court from imposing a restitutionary sentence on a defendant who is indigent at the time of sentencing.' " *Ramilo,* 986 F.2d at 336 (quoting *United States v. Ruffen,* 780 F.2d 1493, 1495 (9th Cir.1986)). The court concluded that the record must indicate that the district court considered the defendant's future ability to pay. *Id.* Here, the record reflects that the district court considered the presentence report in deciding whether to order restitution. Moreover, the presentence report contained information regarding the defendant's financial condition and future ability to pay.[4] Accordingly, we conclude that the district court did not err in ordering restitution in this case. *See United States v. Cannizzaro,* 871 F.2d 809, 811–12 (9th Cir.) (indicating that reference to information in a presentence report provides a sufficient basis for concluding that the district court discharged its responsibilities under § 3664), *cert. denied,* 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989).

AFFIRMED.

---

3. We reserve for another day the questions of whether and when a restitution amount need be apportioned between the individual who actually steals the goods and the individual who "merely" possesses them thereafter. We conclude that apportionment is not necessary when, as here, only one of the culprits has been caught and all the loss is directly attributable to the conduct of that culprit. On different facts, it may be appropriate to apportion the restitution amount.

4. The presentence report examined Bachsian's employment history and listed his assets, including equity in his home and an automobile.