87 F.3d 1324
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Ernest LINDLEY, aka: Robert E. Lindley; aka:
Robert L. Lindley, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Edward COOPER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Valerie JENSEN, Defendant-Appellant.
 Nos. 95-50068, 95-50070 and 95-50163.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 4, 1996.
Decided June 19, 1996.
 
 Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges
 MEMORANDUM*
 William E. Cooper, Robert E. Lindley, and Valerie Jensen were charged in an information with two counts of mail fraud in violation of 18 U.S.C. § 1341. They pled guilty to both counts on August 1, 1994. Cooper was sentenced to 120 months imprisonment based on an offense level of 34[1]; Lindley was sentenced to 108 months imprisonment based on an offense level of 31; Jensen was sentenced to 51 months imprisonment based on an offense level of 24. The district court issued a joint and several restitution order in the amount of $73,127,020 for the three defendants.
 I. CALCULATION OF LOSS UNDER § 2F1.1
 A. The district court determined that the loss under U.S.S.G.[2] § 2F1.1 included $63,090,752 in accrued interest reported to investors on their quarterly statements. Cooper, Lindley, and Jensen contend that this accrued interest should not be included in the loss calculation. Comment (n. 7) to § 2F1.1 provides: "loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred. " (Emphasis added.)
 The $63 million in accrued interest was properly included in the loss amount under § 2F1.1. Cooper, Lindley, and Jensen included the accrued interest in the reported value of the investments to the victims on their quarterly statements. This interest was treated as income to the account holder. The defendants were able to induce their victims into continued investment by including this interest income on the quarterly account statements. It was not "interest the victim[s] could have earned on such funds had the offense not occurred," but income that had already been reported to the victims as "accrued earnings." See United States v. Lowder, 5 F.3d 467, 470 (10th Cir.1993) (where the court included "interest due to investors" in the loss calculation under § 2F1.1).
 B. Cooper, Lindley, and Jensen also argue that the district court clearly erred in factually determining the amount of the loss by including the $63 million in accrued interest. Losses suffered in fraud schemes "need not be determined with precision." U.S.S.G. § 2F1.1, comment (n. 8). "The court need only make a reasonable estimate of the loss, given the available information." United States v. Niven, 952 F.2d 289, 291 (9th Cir.1991) (quoting § 2F1.1, comment (n. 8)). The district court relied on a report of investor losses and a sample quarterly statement from a defrauded investor. "A district court may generally consider a wide variety of information when imposing sentence so long as that sentence is not based on misinformation of constitutional magnitude." United States v. Columbus, 881 F.2d 785, 787 (9th Cir.1989). The district court did not clearly err in its factual determination of loss.
 C. Jensen argues that the district court erred by failing to reduce the amount of loss calculation based on the decline in the real estate market. Jensen waived this argument by failing to raise the factual challenge in the district court. See United States v. Smith, 897 F.2d 909, 911 (7th Cir.1990) ("[T]he record is devoid of any demand in the district court that the government detail its calculation. [Appellant] may not make such a demand for the first time on appeal.") Further, Jensen's argument is without merit.
 II. JEOPARDIZING THE SAFETY OF A FINANCIAL INSTITUTION
 The district court imposed a four level upward departure under § 2F1.1(b)(6)(A) on the ground that the fraudulent conduct "substantially jeopardized the safety and soundness of a financial institution." Cooper, Lindley, and Jensen contend that Congress did not intend the "financial institution" enhancement under § 2F1.1(b)(6) to apply to financial institutions that are not federally-insured. The relevant enabling statute directed the Sentencing Commission "to promulgate guidelines, or amend existing guidelines, to provide for a substantial period of incarceration for a violation ... that substantially jeopardizes the safety and soundness of a federally-insured financial institution." Pub.L. No. 101-73 § 961(m), 103 Stat. 501. The Guidelines define "financial institution" to include, among other things, any "trust company, credit union, insurance company, investment company ... or any similar entity, whether or not insured by the federal government. " U.S.S.G. § 2F1.1, comment (n. 14). This definition of "financial institution" does not conflict with the enabling statute, but merely "implements, in a broader form, the instruction to the Commission in Section 961(m) of Public Law 101-73." U.S.S.G. § 2F1.1, comment (background).
 Cooper, Lindley, and Jensen also contend that the district court factually erred in finding that Summit Trust was a "trust company ... or any similar entity" under § 2F1.1, Comment (n. 14). The district court did not err. Summit Trust was chartered by the Colorado State Bank Commissioner and was authorized to conduct a trust business under the laws of Colorado. Even if Summit Trust did not actually direct investments, it performed services typical of a "trust company ... or any similar entity." By holding title to assets, controlling the uninvested cash deposits, and filing tax reports, Summit Trust falls within the Sentencing Guidelines' definition of a "financial institution."
 III. OBSTRUCTION OF JUSTICE
 Cooper and Lindley argue that the district court erred by imposing a two level upward departure under § 3C1.1.[3] It is undisputed that Cooper and Lindley submitted falsified trust deeds and other documents to a federal grand jury in response to a subpoena directed at Vestcorp Securities in January 1993. They argue that because the Presentence Report states, "[s]ubsequent to the closing of Summit Trust and First Pension [in April 1994], the FBI began its investigation," the obstruction of justice could not have taken place "during the investigation ... of the instant offense" as required by § 3C1.1.
 Other evidence considered by the district court, however, does support the finding that the obstruction took place during the investigation of the instant offense. Special Agent Cunnane's declaration provides that the investigation began in October 1992 when the FBI received confidential information about Cooper's involvement in a fraud scheme. Agent Cunnane then served Cooper with a grand jury subpoena requesting all documents pertaining to the limited partnerships or mini-funds. In response to this request, Cooper and Lindley created the false trust deeds to conceal the lack of actual assets. The Information to which Cooper and Lindley pled guilty, alleged the fraudulent sale of these mini-fund investments and the falsification of trust deeds in response to a grand jury subpoena. The two level upward departure for obstructing the administration of justice during the investigation of the instant offense under § 3C1.1 is supported by a preponderance of the evidence.
 
 
 1
 IV. ORGANIZER OR LEADER OF A CRIMINAL ACTIVITY
 
 
 2
 Cooper contends that the district court clearly erred in finding him to be "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive" under § 3B1.1(a). Cooper does not dispute that there were at least five criminal participants. He argues that no enhancement should have been imposed under § 3B1.1 because the Presentence Report found that Cooper, Lindley, and Jensen "appear to be equal in their decision-making authority[.]" The commentary to § 3B1.4 provides: "Many offenses are committed ... by individuals of roughly equal culpability so that none of them will receive an adjustment under this Part." Cooper contends that it would be inequitable to impose the § 3B1.1 enhancement on him alone.
 
 
 3
 To be eligible for this upward departure, Cooper "must have exercised some control over one or more other criminal participant." United States v. Hoac, 990 F.2d 1099, 1110 (9th Cir.1993). Cooper: 1) recruited and exercised control over his assistant, Russell-Myette, 2) took more compensation then Lindley or Jensen, 3) exercised the greatest control over the funds diverted from investors, and 4) asked Jensen to resign when she refused to divert more funds from Summit Trust's cash deposits. Even if this departure creates a sentence disparity between Cooper and Lindley, "[d]isparity in sentencing among co-defendants is not, by itself, a sufficient ground for attacking an otherwise proper sentence under the [G]uidelines." United States v. Taylor, 991 F.2d 533, 536 (9th Cir.1993). The disparity must also be the "result of incorrect or inadmissible information, or an incorrect application of the Sentencing Guidelines." United States v. Carpenter, 914 F.2d 1131, 1136 (9th Cir.1990). Cooper has not made this showing.
 
 V. VIOLATION OF THE PLEA AGREEMENT
 
 4
 Lindley contends that the government breached its plea agreement by seeking enhancements under both § 2F1.1 [jeopardizing a financial institution] and § 3B1.3 [use of special skill]. The plea agreement provides, "this Office agrees that it will not seek adjustments both under these sections [§ 2F1.1(b)(7) and § 2F1.1(b)(6) ] and for abuse of trust under § 3B1.3." In another section, the plea agreement provides:
 
 
 5
 6. Abuse of Trust. The parties will attempt to determine prior to sentencing whether any adjustments under § 3B1.3 for abuse of trust are applicable in this case.... provided, however, that this Office agrees that it will not seek an adjustment both under this section and for jeopardizing or affecting a financial institution under § 2B1.1(b)(7) and § 2F1.1(b)(6).
 
 
 6
 Section 3B1.3 provides two alternative bases for departure: 1) abuse of trust, and 2) use of special skill.
 
 
 7
 At sentencing, the government sought increases under § 2F1.1(b)(6) for jeopardizing a financial institution and § 3B1.3 for use of special skill. Lindley argues that the government agreed not to seek any departure under § 3B1.3 if it sought a departure under § 2F1.1(b)(6).
 
 
 8
 "To determine whether a violation [of a plea agreement] has occurred, the ... court should consider what [Lindley] reasonably understood when he pled guilty." United States v. Anderson, 970 F.2d 602, 607 (9th Cir.1993). The government only agreed not to seek a departure for breach of trust under § 3B1.3 if it sought a departure under § 2F1.1(b)(6). It was free to seek a departure for use of special skill under § 3B1.3. The government did not violate the plea agreement.
 
 VI. RESTITUTION ORDER
 
 9
 Cooper, Lindley, and Jensen contend that the district court erred in its restitution order by failing to adequately consider whether they had the ability to pay. The district court is required to "consider ... the financial resources of the defendant [and] the financial need and earning ability of the defendant and the defendant's dependents[.]" 18 U.S.C. § 3664(a). "District courts have wide latitude in fashioning and calculating restitution orders so long as the orders are authorized by law, and we review such orders only for abuse of discretion." United States v. Soderling, 970 F.2d 529, 534 (9th Cir.1992).
 
 
 10
 The record must reflect: 1) that the district court had at its disposal information bearing on the considerations enumerated in § 3664, and 2) that the judge gave some thought to the relevant information. United States v. Mills, 991 F.2d 609, 611 (9th Cir.1993). The record does reflect both the relevant information and the fact that the district court judge gave it some thought. The record must also reflect, however, "some evidence that the defendant may be able to pay restitution in the amount ordered in the future." United States v. Ramillo, 986 F.2d 333, 336 (9th Cir.1993). "The possibility of an unforeseeable windfall is not enough." Id. at 335.
 
 
 11
 The record suggests a previous annual salary of up to $180,000 for Lindley and between $200,000 and $400,000 for Cooper. Lindley was a Certified Public Accountant. Cooper does not have a college education and has lost his real estate license. Jensen did not graduate from high school and is presently indigent. The record does not contain sufficient evidence that these three may ever be able to pay restitution in the amount of $73 million.
 
 
 12
 Restitution orders are part of the criminal sentence under the Victim and Witness Protection Act of 1982, 18 U.S.C. 3664(a). "A district court's failure to make a restitution order with which a defendant could possibly be expected to comply threatens respect for judicial orders generally." Ramillo, 986 F.2d at 336 (quoting United States v. Logar, 975 F.2d 958, 964 (3d Cir.1992)).
 
 
 13
 [A]t the time the court orders restitution it is most paramount that the defendant, in the all-important rehabilitative process, have at least a hope of fulfilling and complying with each and every order of the court. Thus, an impossible order of restitution, as made in this case, is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitution and impeding the rehabilitative process.
 
 
 14
 Id. (quoting United States v. Mahoney, 859 F.2d 47, 52 (7th Cir.1988)). We vacate the restitution order and remand to the district court to order restitution in an amount that each defendant may be able to pay in the future.
 
 VII. CONDITIONS OF SUPERVISED RELEASE
 
 15
 Jensen contends that the district court erred by requiring her to participate in substance abuse treatment and abstain from consuming alcohol as conditions of her supervised release. The sentencing judge has broad discretion in setting conditions of supervised release. United States v. Chinske, 978 F.2d 557, 559 (9th Cir.1992). "The court may impose other conditions of supervised release to the extent that such conditions are reasonably related" to the factors listed in § 5D1.3. These factors "aren't necessary elements, each of which has to be present." United States v. Johnson, 998 F.2d 696, 697 (9th Cir.1993).
 
 
 16
 U.S.S.G. § 5B1.4(b)(23) recommends the imposition of these conditions "[i]f the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol[.]" Jensen was convicted of drunk driving in 1987 and admitted using marijuana, at times on a daily basis, as a means of unwinding. She also reported the use of cocaine "on several occasions seven or eight years ago." See Presentence Report, p 227. The conditions placed on Jensen's supervised release are reasonably related to the factors listed in § 5D1.3.
 
 VIII. ACCEPTANCE OF RESPONSIBILITY
 
 17
 The government concedes that the district court erred when it declined to grant Cooper a three-level downward adjustment under § 3E1.1(b) after finding that he was entitled to a two-level downward adjustment for acceptance of responsibility under § 3E1.1(a). Cooper should have received the additional one-level adjustment under § 3E1.1(b). It is not disputed that his plea: 1) was timely and 2) permitted the government to avoid preparing for trial and the court to allocate its resources effectively. Cooper should have been sentenced based on an offense level of 33 rather than 34. Cooper's Guideline range for an offense level of 33 would be 135-168 months. Since Cooper was sentenced based on the 120 month statutory maximum for the two counts of mail fraud, this error was harmless. It would not have affected Cooper's sentence.
 
 
 18
 The sentences of Cooper, Lindley, and Jensen are AFFIRMED. The joint and several restitution order for $73 million is VACATED AND REMANDED for issuance of individual restitution orders in an amount that each defendant could be expected to pay. Neither Cooper, Lindley, nor Jensen will ever be able to pay restitution in the amount ordered.
 
 
 19
 AFFIRMED. REMANDED for reconsideration of restitution.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cooper received the statutory maximum sentence of 10 years for two counts of mail fraud in violation of 18 U.S.C. § 1341
 
 
 [2]
 All references to the Guidelines are to the November 1, 1994 version
 
 
 [3]
 No showing of materiality is required under § 3C1.1, comment (n. 3(c))