**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steve ANGELICA, Defendant–Appellant.**

**No. 86–5291.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1988.

Decided Oct. 20, 1988.

---

William F. Fahey, Asst. U.S. Atty. Chief, Public Corruption & Government Fraud Section, Los Angeles, Cal., for plaintiff-appellee.

Steve Angelica, Lompoc, Cal., in pro per.

Before HUG, FLETCHER and FARRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Steve Angelica was convicted after a jury trial of 23 counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. He was sentenced to six years in custody, placed on five years consecutive probation, and ordered to pay $451,846 as restitution to his victims. The judgment requires immediate payment and is a condition of probation as well. We affirmed his convictions in a separate disposition. Here we consider Angelica's challenges to his sentence of restitution.

## BACKGROUND

Angelica oversaw the day-to-day operation of Kimberly International Gem Corporation (Kimberly) which used numerous high-pressure salesmen as part of a scheme to defraud clients of diamonds, cash and

investment securities. One of Kimberly's schemes was the so-called "diamond takeaway scheme," devised by Angelica and his co-president Stephen Small. Angelica and Small provided Kimberly salesmen with a list of people who had previously purchased diamonds from other companies, together with a script laying out a variety of lies, misrepresentations and high-pressure sales tactics to persuade customers to mail in diamonds supposedly to be sold by Kimberly for a profit. The salesmen, including Angelica, promised their customers the cash proceeds, less a commission, from the sales. Kimberly customers in fact never received the proceeds from the sale of their diamonds. After selling the diamonds, Angelica and his codefendants, without their customers' authorization, would substitute inexpensive red garnets for the sale proceeds and keep the proceeds themselves.

Angelica was indicted on 25 counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and convicted of 23 of the counts. During the 19-day trial, 15 victims testified to losing $451,846 in diamonds, cash and bonds. Most of these victims testified to dealing with Kimberly employees, including Angelica, over the telephone or by mail.

## DISCUSSION

■ Angelica argues that the district court erred in (1) ordering immediate restitution; (2) determining the amount of restitution; and (3) ordering restitution for offenses in which no conviction was obtained. We review the legality of a sentence *de novo. United States v. Youpee*, 836 F.2d 1181, 1182 (9th Cir.1988). A sentence which is within statutory limits is reviewed for abuse of discretion. *Id.*

### I. *Timing of Restitution*

Angelica contends that most of the fraudulent transactions occurred prior to January 1, 1983, the effective date of 18

U.S.C. §§ 3579–3580. He argues, therefore, that restitution could only be ordered as a condition of probation pursuant to 18 U.S.C. § 3651.

■ There are two distinct authorities under which a federal court may order a convicted defendant to make restitution: the Federal Probation Act (FPA), 18 U.S.C. § 3651, and the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579–3580. The record on appeal fails to specify under which authority restitution was imposed.[1] The FPA provides in pertinent part:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, [the court] ... may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

....

*While on probation* and among the conditions thereof, the defendant ... [m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had....

18 U.S.C. § 3651 (emphasis added). Because the FPA authorizes a district court to impose restitution only as a condition of the defendant's probation, by implication a district court is not authorized to order immediate restitution while the defendant is incarcerated.

On the other hand, the VWPA provides that a court,

when sentencing a defendant convicted of an offense under [Title 18], may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense.

18 U.S.C. § 3579(a)(1). Effective with respect to offenses occurring after January 1, 1983, the VWPA authorizes a court, "for the first time, to order payment of restitution independently of a sentence of proba-

---

**1.** Because the two statutes require different factual inquiries, "the sentencing judge should specify in the record under which [authority] he imposes any restitution. Such disclosure would

ease determination of the propriety of ordering restitution in particular cases." *United States v. Shackleford,* 777 F.2d 1141, 1146 n. 4 (6th Cir. 1985).

tion." S.Rep. No. 532, 97th Cong., 2d Sess. 30 *reprinted in* 1982 U.S.Code Cong. & Admin.News 2515, 2536. The legislative history of the VWPA demonstrates that it was meant to fill the sentencing gap left by § 3651, which contains no restitution provision apart from probation. *United States v. Signori*, 844 F.2d 635, 640 (9th Cir.1988). Because the district court ordered immediate restitution apart from Angelica's probation, we will review the order as one authorized by the VWPA.

■ The VWPA applies only "with respect to offenses occurring on or after January 1, 1983." Pub.L. No. 97–291, § 9(b)(2), 96 Stat. at 1258; 18 U.S.C. § 1512 note; *Signori*, 844 F.2d at 640. In this case, the indictment alleged and Angelica was convicted of multiple counts of mail and wire fraud, emanating from a scheme that began in June 1982 and continued through July 1983. As was noted in *Signori*, "[t]here is some question as to whether the [VWPA] may be applied to continuing offenses, such as conspiracy or scheme to defraud, commencing before January 1, 1983, and extending beyond that date." 844 F.2d at 640. In *Signori*, however, we declined to address that issue since we determined that the restitution order was imposed pursuant to the FPA. *Id.*

This issue which we must now confront has resulted in a division among the various circuits. *Compare United States v. Corn*, 836 F.2d 889, 895–96 (5th Cir.1988) (restitution only of losses resulting from criminal acts committed after January 1, 1983); and *United States v. Oldaker*, 823 F.2d 778, 781–82 (4th Cir.1987) (restitution only of losses resulting after January 1, 1983); and *United States v. Martin*, 788 F.2d 184, 188–89 (3d Cir.1986) (same); *with United States v. Purther*, 823 F.2d 965, 968 (6th Cir.1987) (unitary scheme continuing beyond January 1, 1983, triggers the VWPA for all losses resulting from the scheme); and *United States v. Barnette*, 800 F.2d 1558, 1571 (11th Cir.1986), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987) (same).

The offenses of mail and wire fraud, of which Angelica was convicted, involve both the use of the mails or interstate wire or radio communications, and a fraudulent scheme similar to the ongoing offense of conspiracy. *See Phillips v. United States*, 679 F.2d 192, 196 (9th Cir.1982). We have held, therefore, that restitution can be based on the amount of damages "caused by the entire scheme rather than only in the amount caused by a particular mailing." *Id.* Although *Phillips* applied the FPA, its rationale leads us to conclude that we should not focus on particular mailings or telephone calls to determine exactly when the victims' losses occurred. Rather, we look to the duration of the entire fraudulent scheme: "[s]o long as the perpetrator is using the mails to further the scheme, he is engaged in the offense [of mail fraud]." *United States v. Purther*, 823 F.2d at 968. Moreover, in this ongoing scheme, the defendants continued to make fraudulent representations after the victims' diamonds were taken in order to lull the victims, and complete the scheme; in these circumstances, we do not find it appropriate to say that the victims' losses were caused by specific mailings or communications. *Cf. United States v. Pomazi*, 851 F.2d 244, 249–50 (9th Cir.1988) (court looks to overall scheme to defraud in determining amount of restitution).

■ Because the fraudulent scheme continued beyond January 1, 1983, we hold that all of the victims' losses are subject to a judgment of restitution under the VWPA. *See Purther*, 823 F.2d at 967–68; *United States v. Barnette*, 800 F.2d at 1571. Accordingly, the district court had discretion to order immediate restitution in conjunction with Angelica's prison sentence.

## II. *Amount of Restitution*

Angelica contends that the district court erred in determining the amount of restitution he was required to pay. The district court based the restitution order of $451,-846 on the "value of the loss ... [as] measured by the value of the stones at the time and in the amount of their pur-

chase." [2]  According to Angelica, the diamonds involved in the fraudulent transactions had dropped considerably in value prior to the actions of defendants.[3]

■ The VWPA grants the sentencing judge substantial discretion over the entire process leading to an ultimate restitution order. *See* § 3579(a), (d), (e)(1), (f)(1), (g); § 3580(b), (d).  As part of the process, the judge must decide in a particular case, whether the imposition of the order will "unduly complicate or prolong the sentencing process." § 3579(d).  Here, the district court determined the amount of restitution based upon evidence presented at trial and in a presentence report showing the value of the diamonds at the time they were initially purchased by the victims.  That section of the VWPA dealing with the amount of restitution states in pertinent part:

> (b) The order may require that such defendant—
>
> (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—
>
> \*　\*　\*　\*　\*　\*
>
> (B) If return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—
>
> (i) *the value of the property on the date of the damage, loss or destruction, or (ii) the value of the property on the date of sentencing,* less the value (as of the date the property is returned) of any part of the property that is returned;
> ....

18 U.S.C. § 3579(b)(1)(B) (emphasis added). "While the district court has discretion in ordering restitution, ... the award must be within the statutory framework." *United States v. Kenney,* 789 F.2d 783, 784 (9th Cir), *cert. denied,* 479 U.S. 990, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986) (citations omit-

ted).  Because the amount of restitution ordered in this case was based neither on the value of the diamonds on the date of loss, nor on their value at the date of sentencing, the restitution order was beyond the authority granted by the statute.  Although valuing the diamonds as of the date of loss or sentencing may present a difficult determination for the district court, the choice of two possible dates of valuation is stated unambiguously in § 3579.  We must therefore remand to the district court for valuation of the diamonds on one of those two dates.

The burden is on the government to show, by a preponderance of the evidence, the amount of loss sustained by a victim. 18 U.S.C. § 3580(d).  Although the district court erred by relying exclusively on the purchase price of the diamonds, it may consider the purchase price in determining the value of the diamonds at the time of loss or of sentencing.

■ Angelica also suggests that the restitution order should be lessened by the value of the garnets which victims received in exchange for their diamonds.  Section 3579(b)(1)(B)(i) provides for restitution in an amount "less the value ... of any part of the property that is returned."  The quoted language refers to return of the property lost, not to substitute property.  Perhaps in some circumstances a district court would have discretion to take substitute property into account in determining the amount of loss.  Here, we find no abuse of discretion in the district court's decision to disregard the value of the inexpensive garnets that were unwanted by the victims and substituted for their diamonds as part of the fraudulent scheme.

## III.　*Restitution to Particular Victims*

■ Angelica argues that the restitution order improperly included losses by victims

---

**2.** The court also specified that Angelica would be credited for (1) any amounts paid to the victims as a result of a civil settlement between Angelica and the Federal Trade Commission in a related civil action; and (2) any contribution that may in the future be ordered against his codefendants.

**3.** There was evidence that by the time the diamonds were sent to Kimberly, their value had depreciated as much as 75 percent.  The district court noted that Angelica's sentence would "reflect the fact that the market for diamonds depreciated," but only for purposes of so informing the Parole Board.

as to whom "no conviction was had." Appellant's Brief at 49 (quoting 18 U.S.C. § 3651). Angelica points out that, although he was indicted and convicted of making fraudulent representations via mail and wire to seven of the fifteen victim-witnesses, the district court took into account the losses of all fifteen victim-witnesses in setting the amount of restitution.

Under 18 U.S.C. § 3579(a)(1), the district court is authorized to order "that the defendant make restitution to any victim of the offense." We have held that "when the crime charged involves a scheme to defraud, a sentencing court may order restitution [pursuant to § 3579] paid to victims of the entire scheme even though all of them are not named in the indictment or information." *United States v. Pomazi*, 851 F.2d 244, 250 (9th Cir.1988). We require that (1) the amount must be definite and not in excess of what the victims actually lost; (2) the court must be able positively to identify each victim; and (3) the amount of restitution must be judicially established, with the defendant afforded an opportunity to refute the amount ordered. *Id.*

Here, Angelica's indictment described a fraudulent scheme of considerable magnitude, with multiple victims. The proof at trial established that fifteen specific victims lost diamonds purchased for a total in excess of $450,000. Each of these victims testified at trial and was subject to cross-examination on his or her alleged losses, and defense counsel had an opportunity to object to the restitution order at sentencing.[4] The trial court did not err in basing the restitution order on victims not charged in the indictment.

AFFIRMED in part, REVERSED and REMANDED in part.

---

4. We assume that, in some cases, a post-trial evidentiary hearing could be necessary where the defendant's attempt to rebut the restitution amount is based on evidence that was excluded from trial or inconsistent with the trial defense.