UNITED STATES of America,
Plaintiff–Appellee,

v.

Steve ANGELICA, Defendant–Appellant.

No. 90–50696.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1991.

Decided Dec. 6, 1991.

and can be present without question at the resentencing.

We affirm in part, reverse in part and remand.

Steve Angelica, pro se.

Mark D. Larson, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, NELSON and BRUNETTI, Circuit Judges.

FLETCHER, Circuit Judge:

Steve Angelica appeals *pro se* a restitution order entered against him as part of his sentence on November 27, 1990. He had been convicted of mail and wire fraud for participation in a fraudulent trading business which persuaded customers to send their diamonds in for resale, then misappropriated the proceeds. A first restitution order was entered in 1986. Angelica appealed that order with partial success. *See United States v. Angelica,* 859 F.2d 1390 (9th Cir.1988) ("*Angelica I*"). Angelica now appeals the revised order imposed on remand.

Angelica argues: that the restitution order should be modified to conform with the Supreme Court's decision in *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (the government agrees); that the district court erred in ordering immediate restitution; that at resentencing the district court imposed joint and several liability after it had foreclosed such liability at the original sentencing; that the district court erred in ordering restitution based on an incorrect valuation of the converted diamonds; and, that the district court erred in indicating that interest and penalties may be imposed if Angelica's restitution payments become overdue. He also asserts that his resentencing was illegal because his sentence was increased without his presence. We do not reach this latter issue in light of the fact that a further resentencing must take place in any event. Angelica is no longer incarcerated

## BACKGROUND

Angelica was co-president of Kimberly International Gem Corporation, an organization which persuaded customers to send in loose diamonds purportedly for resale by Kimberly, and then sold the diamonds and kept the proceeds. Together with Steve Small, the other co-president, Angelica was convicted of mail and wire fraud. Several other participants in the scheme pled guilty.

At the original sentencing, Angelica and Small were sentenced to prison terms. The court also ordered them to make restitution. At sentencing, counsel for the defendants and the government discussed how the restitution order should be structured, in view of the number of participants in the scheme to defraud. At the conclusion of this discussion, the district court judge stated:

> I think what I ought to do is just make the total restitution order at the maximum, which would be the 451,000 figure, and before everybody faints, recognizing that that's exactly the intention of it and that after the process has wound its way through, that I will then reduce it to a sum certain that fairly represents everyone's involvement and a balance of contribution and whatever.

The court subsequently ordered Angelica to "make restitution as directed by the probation office to the aggrieved parties who were victims in this case in the amount of 451,846 dollars...."

Angelica appealed the restitution order. On that appeal, we held that restitution could be based on losses by all victims of the fraudulent scheme, rather than merely on losses by victims named in the indictment, and that the district court erred by not basing the amount of restitution on the value of the diamonds on the date of loss or of sentencing. We remanded for a redetermination of the amount of restitution,

based on such a valuation. *Angelica I*, 859 F.2d at 1393-1395.

On remand, the district court conducted a valuation hearing. Martin Rapaport, a New York diamond dealer, testified for the government as to valuation; Anthony Magnemi, a Los Angeles diamond broker, testified for Angelica.

The district court found "as a matter of fact that Rapaport's valuation of the diamonds is the more persuasive, accurate and appropriate calculation of the value of the victims' diamonds under the VWPA...." It ordered Angelica to pay restitution in the amount of $413,117.06. It also stated that he and his codefendants were jointly and severally liable for that amount, but that Angelica would be credited for any contributions by codefendants or amounts paid to victims as a result of a civil settlement arising out of the same fraudulent conduct.

## STANDARD OF REVIEW

Provided it is within the statutory framework, a restitution order is reviewed for abuse of discretion. *United States v. Youpee*, 836 F.2d 1181, 1182 (9th Cir.1988). Legality of a sentence is reviewed *de novo. Id.*

## DISCUSSION

### I. Modification of the Restitution Order to Conform with *Hughey*

■ In *Angelica*, we held that " 'when the crime charged involves a scheme to defraud, a sentencing court may order restitution paid to victims of the entire scheme even though all of them are not named in the indictment or information.' " *Angelica I*, 859 F.2d at 1395 (quoting *United States v. Pomazi*, 851 F.2d 244, 250 (9th Cir. 1988)). The Supreme Court has subsequently held that a court cannot order restitution under the Victim and Witness Protection Act ("VWPA") for acts other than those underlying the offense of conviction. *Hughey*, 110 S.Ct. at 1982.

The district court's restitution order must be modified to conform with *Hughey*. The government notes that the restitution order encompasses "losses sustained by fif-

teen victims, seven of whom were not the subjects of counts of conviction." On remand, the district court should redetermine the amount of restitution to be paid, including only the losses sustained by the eight victims named in the indictment.

### II. Modification of Restitution Order to Include Payment Period

■ The restitution order the district court issued after our remand in *Angelica I* did not specify a payment period. When the district court does not provide for a payment period, restitution must be immediate. 18 U.S.C. § 3663(f)(3).

Angelica argues that the district court erred in ordering (apparently inadvertently) immediate restitution where there was undisputed evidence that he was currently unable to pay. However, the VWPA "does not prohibit a sentencing court from imposing a restitutionary sentence upon a defendant who is indigent at the time of sentencing." *United States v. Keith*, 754 F.2d 1388, 1393 (9th Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985). Moreover, the revised restitution order indicates that the district court considered Angelica's ability to pay in issuing the order, thus meeting the requirements of the VWPA. *See* 18 U.S.C. § 3664(a) (sentencing court shall consider financial resources of the defendants in determining amount of restitution).

We have the authority to specify a payment period. *See Keith*, 754 F.2d at 1393. However, in view of the remand already required in this case, we instead leave it to the district court to consider this issue on remand and, if appropriate, to specify a payment period.

### III. Joint and Several Liability for Restitution

Angelica argues that the district court's statements at his original sentencing barred the imposition of joint and several liability at resentencing. He points to the district court judge's statement that "at a later time [she] would 'reduce [the amount of restitution] to a sum certain that fairly

represents everyone's involvement and a balance of contribution and whatever,'" and complains that on remand the court "refused to make the promised division." Angelica claims that the first restitution order "clearly foreclosed the possibility of joint and several liability."

Angelica's claims as to the district court's promises at his first sentencing are exaggerated. The district court's suggestion that its restitution order might eventually be modified may have led Angelica to expect that his restitution liability would be reduced. However, after the discussion of the mechanics of restitution had ended, the district court ultimately ordered Angelica to make restitution of the entire amount of his victims' losses (with credit to be given for restitution other defendants ultimately made in other criminal and civil proceedings). A review of the record reveals that the district court did not foreclose joint and several liability. Angelica cannot ask us to hold the district court to promises it never made.

### IV. Error in Valuing the Converted Property for which Angelica Must Make Restitution

■ Angelica argues that the district court erred in determining the amount of restitution. Specifically, he suggests it erred in the valuation placed on the diamonds surrendered by the victims.

In determining restitution, "[t]he burden is on the government to show, by a preponderance of the evidence, the amount of loss sustained by a victim." *Angelica I*, 859 F.2d at 1394. The district court's opinion indicates that it based its valuation on Mr. Rapaport's calculations of an "estimated retail value" for the diamonds lost by each of the victims.

The parties agree that the victim's position in the market is relevant in valuing converted property. *See Hughey*, 110 S.Ct. at 1982 (restitution restores the victim "to a position he occupied before a particular event"). However, they disagree as to where Angelica's victims were situated in the market.

Angelica argues that the victims of the Kimberly scheme were "investors" who would purchase diamonds not at retail but at wholesale prices substantially lower than the prices Rapaport indicated. We reject Angelica's effort to attribute this level of sophistication to his victims. Reviewing the district court's decision on this issue for abuse of discretion, we affirm its finding that in view of the victims' market position, Mr. Rapaport's valuation of their losses was the more persuasive.

Angelica also argues that the court erred in basing its "retail" valuation of single diamonds on the cost of stones in settings, rather than on the cost of loose stones. The record does not support this argument.

We conclude that the district court's valuation of the diamonds lost by Angelica's victims was not clearly erroneous.

### V. Imposition of Interest and Penalties for Past Due Restitution

■ In the restitution order it issued after remand, the district court refused the government's request that it assess interest on the unpaid portion of the restitution because the ordered restitution was not yet past due. However, the district court did set out the law it would apply on this issue. Angelica argues this statement of the law was incorrect. To avoid further appeals on this issue, we address it now.

The district court stated that, under the VWPA and related statutes as they "existed at the time of the offense," interest and penalties could be imposed if restitution ordered was past due. *See* Criminal Fine Enforcement Act of 1984, § 2, 18 U.S.C. § 3565(c)(1) (repealed 1986). However, the provision for interest and penalties was added to 18 U.S.C. § 3565 in 1984, and applied only to offenses committed after December 31, 1984. Criminal Fine Enforcement Act of 1984, § 10. The statute in place before the Criminal Fine Enforcement Act was enacted did not impose interest for past due restitution. *See* H.R.Rep. No. 906, 98th Cong., 2d Sess. 7 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 5433, 5440 ("Current statutes do

not impose interest for tardy payment of a fine.").

The indictment entered against Angelica alleges a scheme which operated from June 1982 through about July 1983. The latest count of mail or wire fraud listed in the indictment took place on August 2, 1983.

Thus, because all Angelica's offenses took place before the effective date of the statute which provided for the imposition of interest and penalties, interest cannot be assessed against Angelica for past due restitution.

AFFIRMED in part, REVERSED and REMANDED in part.