**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mary Ann GRICE, Defendant–
Appellant.**

**No. 01–30462.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 2002.

Filed Feb. 14, 2003.

Mary C. Geddes, Assistant Federal Public Defender, Anchorage, Alaska, for the appellant.

Crandon Randell, Assistant United States Attorney, Anchorage, Alaska, for the appellee.

Before BROWNING, FISHER and TALLMAN, Circuit Judges.

## OPINION

PER CURIAM.

Appellant, Mary Ann Grice, appeals the restitution portion of her sentence imposed following her guilty plea to four counts of mail fraud, 18 U.S.C. § 1341, and four counts of forgery, 18 U.S.C. § 513, arising from a scheme to defraud her son and Cook Inlet Region Incorporated. The district court ordered Grice to pay $15,882.38 of restitution for dividend checks issued to her son after his eighteenth birthday which she received in the mail, forged and cashed. We affirm.

## BACKGROUND

From 1974 to 1996, Grice cashed ninety dividend checks issued to her son, William, by Cook Inlet Region Incorporated (CIRI). The district court found that Grice, as legal guardian of her son, was legally entitled to cash checks issued to William before his eighteenth birthday in October 1988. Prior to William's eighteenth birthday, Grice submitted to CIRI eleven change of address forms on her son's behalf, listing her own address although William was living with his father in another state.

When William turned eighteen, CIRI sent him a letter, at Grice's address, informing him of his adult status in the corporation and issuing new stock certificates in his name alone. Grice continued to receive William's checks at her address, now endorsing them with his name, and cashing them. In September 1992 Grice filed with CIRI a twelfth change of address form for William, this time forging his name. Grice forged and cashed a total of $15,882.38 in checks between William's eighteenth birthday in October 1988 and December 1996.

Grice pleaded guilty to four counts of mail fraud and four counts of forgery pertaining to four of the dividend checks she cashed. These four checks, totaling $1,400.00, were the only ones within the statute of limitations for the charged crimes out of the ninety checks she cashed.

The district court found Grice's crimes to be part of a long-standing scheme to defraud using the mails and ordered $15,882.38 restitution covering all the checks Grice stole after William's eighteenth birthday. The district court made its order of restitution in the alternative, first imposing the entire amount under the Mandatory Victim Restoration Act (MVRA), 18 U.S.C. § 3663A. Grice committed the eight counts of mail fraud and forgery to which she pled guilty after the

effective date of the MVRA. Thus, the MVRA required the district court to order restitution for those crimes. However, concerned that applying the MVRA to related, but uncharged conduct occurring prior to the effective date of the MVRA might violate the ex post facto clause, the court alternatively ordered the restitution under the discretionary Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663.

## DISCUSSION

Grice argues applying the MVRA to uncharged acts occurring prior to the MVRA's adoption violates the ex post facto clause. Alternatively, she argues the VWPA may not be applied to acts of theft which preceded a scheme to defraud using the mails.

■ We review a restitution order for abuse of discretion, provided it is within the bounds of the statutory framework. *United States v. Rodrigues*, 229 F.3d 842, 844 (9th Cir.2000). The legality of an order of restitution is reviewed de novo. *Id.*

### I. Restitution under the VWPA and the MVRA

The Victim and Witness Protection Act, 18 U.S.C. § 3663, became effective on January 1, 1983, and authorized district courts, "for the first time, to order payment of restitution independently of a sentence of probation." *United States v. Angelica*, 859 F.2d 1390, 1392 (9th Cir. 1988). Under the VWPA restitution can be ordered in connection with convictions for both mail fraud and forgery. 18 U.S.C. § 3663(a)(1)(A). In 1990, the Supreme Court limited the reach of the VWPA by permitting restitution only for "the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).

Later in 1990, Congress amended the VWPA's definition of "victim" to partially overrule *Hughey*, allowing restitution to be "ordered for losses to persons harmed in the course of the defendant's scheme even beyond the counts of conviction." *United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir.1999) (quoting *United States v. Rutgard*, 116 F.3d 1270, 1294 (9th Cir.1997)). Ordering restitution under the VWPA is discretionary and requires the district court to consider the defendant's financial resources and ability to pay. 18 U.S.C. § 3663(a)(1)(A)-(B).

■ When a charged crime involves a scheme to defraud, the court can base restitution under the VWPA on related conduct for which the defendant was not convicted. *Lawrence*, 189 F.3d at 846. The offense of mail fraud involves both the use of the mails and a fraudulent scheme "similar to the ongoing offense of conspiracy." *Angelica*, 859 F.2d at 1393. Thus, restitution under the VWPA can be based on the amount of damages caused by the entire scheme, not just the amount caused by a particular mailing. *Id.* Such an order can include even pre-enactment conduct so long as the mail fraud scheme continued beyond the effective date of the VWPA. *Id.*

■ The Mandatory Victim Restitution Act was enacted on April 24, 1996 as a supplement to the VWPA and applies to both mail fraud and forgery. 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Lincoln*, 277 F.3d 1112, 1113 (9th Cir.2002) (applying the MVRA to conviction for falsifying money orders). In enacting the MVRA, Congress eliminated the district court's discretion and required restitution regardless of the defendant's financial resources or ability to pay. 18 U.S.C. § 3663A(a)(1).[1]

■ Applying the MVRA to crimes committed prior to the MVRA's effective date of April 24, 1996 generally violates the ex post facto clause. *United States v. Baggett*, 125 F.3d 1319, 1322 (9th Cir. 1997). Restitution may be ordered, however, for losses attributable to acts that occurred before and after the effective date of the MVRA when the offense is a conspiracy. *United States v. Kubick*, 205 F.3d 1117, 1128-29 (9th Cir.1999) (conspiracy to commit bankruptcy fraud extended beyond the effective date of the MVRA). In *Kubick*, we suggested restitution under the MVRA, like the VWPA, may be based on the amount of damages caused by an entire scheme in the nature of a conspiracy, whether or not the crime involves a conspiracy. *Kubick*, 205 F.3d at 1128.

■ Taking our cue from Kubick, we hold that the ex post facto clause is not violated when a district court orders restitution under the MVRA for related but uncharged conduct that is part of a mail fraud scheme occurring prior to and continuing past the MVRA's effective date. First, allowing the district court to impose restitution under the MVRA for an entire scheme, including uncharged conduct, is supported by the parallels between the MVRA and the VWPA. The underlying authority for permitting restitution under the VWPA for an entire scheme derives from Congress' 1990 amendment to the VWPA, which changed the definition of "victim" to partially overrule *Hughey* and allow restitution beyond the specific acts of conviction. *Lawrence*, 189 F.3d at 846. The VWPA's definition of victim includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2). The MVRA's definition of

---

1. 18 U.S.C. § 3663(A)(a)(1) provides in part, "the court shall order, in addition to ... any other penalty authorized by law, that the defendant make restitution to the victim of the offense."

victim is identical, 18 U.S.C. § 3663A(a)(2), and we interpret it as we have the definition under the VWPA. Second, allowing the district court to order restitution for a mail fraud scheme occurring prior to and continuing past the MVRA's effective date is supported by our court's reasoning in both *Angelica* and *Kubick*. As we recognized for purposes of restitution in *Angelica*, mail fraud involves a scheme "similar to the ongoing offense of conspiracy." 859 F.2d at 1393. Thus, permitting restitution under the MVRA for related, but uncharged mail fraud conduct occurring prior to and continuing past the MVRA's enactment is consistent with the text of the statute and related authority.

Because Grice committed the crimes that were the subject of the indictment after the effective date of the MVRA, the district court was required to order restitution pursuant to the MVRA. Requiring restitution for related, but uncharged conduct that was part of a mail fraud scheme beginning prior to and continuing past the effective date of the MVRA, like restitution ordered under similar circumstances pursuant to the VWPA, does not violate the ex post facto clause.

## II. The Continuing Scheme

Having found restitution under the MVRA proper for Grice's related, but uncharged conduct, our determination of the validity of the order turns on when her scheme to defraud using the mails began. *Angelica*, 859 F.2d at 1393.

 Mail fraud includes two general elements: first, the defendant devised or intended to devise a scheme to defraud a victim of his money or property; and second, in executing the scheme, the defendant made use of or caused the use of the mails. *United States v. Lo*, 231 F.3d 471, 475 (9th Cir.2000), 18 U.S.C. § 1341. When one "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *United States v. Hubbard*, 96 F.3d 1223, 1229 (9th Cir.1996) (quoting in *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954)). In addition, the mailings must be "sufficiently closely related" to the scheme. *Id.* at 1228.

 Grice pleaded guilty to four counts of mail fraud, thus acknowledging her crimes involved a scheme to defraud using the mails. While she admits she conducted a mail fraud scheme, she argues her scheme did not begin until September 1992 when she forged and filed a twelfth change of address form for William. Grice argues her crimes prior to September 1992 amount only to theft, not mail fraud, because the checks simply kept coming to her after it became illegal to cash them in October 1988. Thus, she argues the order of restitution should not include the $7,535.07 of checks she cashed between William's eighteenth birthday in October 1988 and September 1992.

The checks Grice cashed illegally were delivered to her address solely because of the eleven change of address forms she filed prior to William's eighteenth birthday. Her *modus operandi* was identical throughout the entire period of the scheme she devised. When CIRI sent William a letter informing William of his adult status in the corporation, Grice failed to inform CIRI that William was not living at her address. Grice knew CIRI would continue to send William's checks to her address where she could forge and cash them, knowing it was illegal to do so. By filing eleven change of address forms and then failing to inform CIRI that William no longer lived at her address, Grice "made use of or caused the use of the mails" in furtherance of her scheme. *Lo*, 231 F.3d

at 475. Accordingly, we conclude that Grice's scheme extended back to October 1988 and the district court properly included the disputed $7,535.07 in its restitution order.

### III. Conclusion

For the forgoing reasons, we affirm the district court's order of restitution under the MVRA. Because Grice's crimes were part of a longstanding mail fraud scheme that extended past the effective date of the Act, restitution under the MVRA for her related, but uncharged conduct does not violate the ex post facto clause.

AFFIRMED.