**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50486 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02242-JM-5 |
| v. | |
| AIDA AGUSTI CASTRO, | MEMORANDUM* |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50487 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02242-JM-4 |
| v. | |
| STEPHEN KENNETH CHRYSLER, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50609 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02242-JM-4 |
| v. | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

STEPHEN KENNETH CHRYSLER,

       Defendant - Appellant.

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

  v.

AIDA AGUSTI CASTRO,

       Defendant - Appellant.

No. 13-50229

D.C. No. 3:10-cr-02242-JM-5

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted March 6, 2014
Pasadena, California

Before: PAEZ, N.R. SMITH, and HURWITZ, Circuit Judges.

Defendant Aida Agusti Castro appeals her conviction for four counts of wire fraud under 18 U.S.C. § 1343 and the district court's restitution order. Defendant Stephen K. Chrysler appeals his conviction for five counts of wire fraud under 18 U.S.C. § 1343, his sentence, and the district court's restitution order. We affirm Castro's and Chrysler's convictions, affirm Chrysler's sentence, affirm the

restitution award against Castro, and dismiss as untimely Chrysler's appeal of the restitution award.

**1.** The district court did not abuse its discretion in admitting lender verification documents into evidence under Federal Rules of Evidence 803(6) and 902(11). *See United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000). A number of the verification documents appeared trustworthy on their face; verification steps were recorded on forms containing company letterhead, and the underwriter who conducted the verification signed the form. Moreover, the reliability of all of the documents was further buttressed by testimony that confirmed lenders engaged in verification practices. Contrary to Defendants' arguments, there is no indication that anyone involved in verifying the loan applications in this case was forging verification documentation, or that this practice was so rampant in the industry as to render all verification documentation untrustworthy.

**2.** The district court correctly held that the verification documents did not implicate the Confrontation Clause. Business records "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial . . . are not testimonial" and may be admitted absent confrontation. *Melendez-Diaz v. Massachussetts*, 557 U.S. 305, 324 (2009); *see also United States v. Rojas-Pedroza*, 716 F.3d 253, 1267 (9th Cir. 2013). Here,

there was ample evidence that the verification documents were created for the purpose of determining whether a loan application should be approved, and not for use in court. Borrowers testified that they had been warned banks might call to verify certain information. An accountant and a purported customer testified that they received verification calls related to loan applications. Lender employees testified that verification was a key part of the loan application process.

3. The district court did not err in denying Castro's and Chrysler's motions for judgment of acquittal. In ruling on sufficiency-of-the-evidence challenges, courts consider "the evidence in the light most favorable to the prosecution" and ask whether, viewing the evidence in this light, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Here, the verification documents, lender testimony, borrower testimony, other witness testimony, and the steps Castro and Chrysler took to obtain supporting documentation for the fraudulent loan applications they submitted all support the inference that misrepresentations in the applications were material.

4. The district court did not afford excessive or presumptive weight to the Sentencing Guidelines recommended range in sentencing Chrysler. *See United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (en banc). The record reflects

that the district court carefully considered all of the sentencing factors in 18 U.S.C. § 3553(a). In fact, the court repeatedly mentioned Chrysler's family circumstances and his lack of prior criminal history. Ultimately, however, the court determined that a custodial sentence of thirty-seven months, the low end of the Guidelines range, gave proper consideration to Chrysler's equities, the seriousness of the offense, the need for deterrence, and the need to avoid unwarranted sentencing disparities.

**5.** We dismiss Chrysler's appeal of the restitution award as untimely under Federal Rule of Appellate Procedure 4(b). Rule 4(b)(1) provides that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal." Subsection (b)(2) creates a limited exception to the requirements set out in subsection (b)(1), providing that a premature notice of appeal "filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." However, subsection (b)(2) does not aid Chrysler because his three notices of appeal of the district court's restitution award were all filed months before the district court had even held a restitution hearing. Although the timeliness requirement of Rule 4(b) is not

jurisdictional, when the government does object, dismissal is mandatory. *United States v. Sadler*, 480 F.3d 932, 938–42 (9th Cir. 2007). Here, by raising the issue in its answering brief, the government timely raised the defect. *Id.* at 940–41.

**6.** Our case law forecloses Castro's argument that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applies to restitution. *United States v. Green*, 722 F.3d 1146, 1149–51 (9th Cir. 2013). No recent Supreme Court case is clearly irreconcilable with our rule, and we are therefore bound to follow *Green*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

**7.** The district court did not abuse its discretion in ordering Castro to pay restitution for losses arising out of uncharged and acquitted conduct. "[W]hen someone is convicted of a crime that includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, the court can order restitution for losses resulting from any conduct that was part of the scheme, conspiracy, or pattern of criminal activity." *United States v. Reed*, 80 F.3d 1419, 1423 (9th Cir. 1996) (emphasis omitted); *see also United States v. Brock-Davis*, 504 F.3d 991, 998–99 (9th Cir. 2007); *United States v. Grice*, 319 F.3d 1174, 1177–78 (9th Cir. 2003). The elements of 18 U.S.C. § 1343 include "a scheme to defraud." *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004). Consequently, the restitution award in a wire fraud case may include losses stemming from uncharged and

acquitted conduct if the district court determines, by a preponderance of the evidence, that the losses all stem from the same scheme. *See* 18 U.S.C. § 3664(e); *United States v. Booth*, 309 F.3d 566, 571, 575–76 (9th Cir. 2002). Here, the consistent role Castro played in preparing the fraudulent loan applications that did correspond to charged and convicted offenses, as evidenced by numerous trial witnesses, supported an inference that all of the losses included in the restitution order stemmed from loans that were part of the same common scheme.

**9.** Finally, the district court's restitution order comports with *United States v. Yeung*, 672 F.3d 594 (9th Cir. 2012). The district court awarded restitution based on the unpaid principal balance of a loan only when the government presented evidence that the unpaid principal balance reflected the actual losses sustained by the victims. *See id.* at 601–02. And, in calculating offsets to victim losses, the district court only used the subsequent sale price of the collateral instead of the value of the collateral at the time the victims took control of the property, *see id.* at 604, when the government submitted evidence that the subsequent sale price was higher than the value of the collateral at the time the victim took control of the properties.

**DISMISSED in part, AFFIRMED in part.**